IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANYON BRIDGE FUND I, LP,<br><br>Plaintiff,<br><br>v.<br><br>WAVE COMPUTING, INC.,<br><br>Defendant. | Case No. 21-cv-01512-CRB<br><br>**ORDER RE BANKRUPTCY APPEAL** |

    Appellant Canyon Bridge Fund I, LLC ("Canyon Bridge") appeals the Bankruptcy Court's confirmation of Appellee Wave Computing, Inc.'s ("Wave") Chapter 11 Plan of Reorganization ("Plan"). At an auction, Tallwood Technology Partners, LLC ("Tallwood"), which held debt and equity in Wave, successfully bid $61.3 million on the company's assets. Under the Plan, Classes 1, 2, and 4 were unimpaired and Class 5 was likely satisfied to about 80%. If Class 5 was fully satisfied, Tallwood could then collect on its allowed Class 3 claims. The "disputed" Class 6 Intercompany claim came last. Classes 7 through 16 were extinguished and released.

    Canyon Bridge, whose most senior claims were in Class 7, filed a late objection arguing that the Plan was not "fair and equitable" under 11 U.S.C. § 1129(b). Canyon Bridge contended that the unasserted Windtree causes of action, which were assigned to the Liquidating Trust, might satisfy the rest of Class 5 claims and then provide a windfall to Class 3. The Bankruptcy Court overruled the objection, finding that the record showed no evidence that the effective-date funds would exceed the full distribution. Canyon Bridge appealed. Concluding that this finding was not clearly erroneous and that the Bankruptcy Court did not abuse its discretion, the Court AFFIRMS.

## I. BACKGROUND

Wave was a privately-held startup company specializing in dataflow processor technology. ER-A0093.[1] Its largest shareholder was Tallwood. Id. Canyon Bridge was a creditor and interest holder in Wave, and its most senior claims in the Plan were in Class 7. See Gribble decl. (dkt. 16-1) ¶ 3 & Ex. B).

On April 27, 2020, Wave and its six direct and indirect subsidiaries filed for bankruptcy under chapter 11. ER-A0002-19. In September 2020, Wave began marketing its assets through a months-long sale process by Armory Securities LLC. ER-A0591. Wave also pushed forward a plan of reorganization supported by Tallwood, which held pre- and post-petition debt in Wave as well as equity. See SER-SA00308-86 (Joint Chapter 11 Plan); ER-A0595-687 (Sixth Amended Plan). If its assets received bids in excess of $52.5 million, Wave would proceed to an auction to market test the value of the estate. ER-A0458-59, 592. The auction began on December 21, 2020, and a third-party stalking horse bidder bid $57.5 million and Tallwood bid $61.3 million. SER-SA1019-22, 1067-68. Tallwood's winning $61.3 million bid included several modifications as a compromise with the Official Committee of Unsecured Creditors ("Committee"). See SER-SA00504-05. Tallwood agreed to subordinate its Class 3 claims to Class 5 (general unsecured) claims. ER-A0629 n.1, 636-37. Class 6, the intercompany claims, would come next in line, and would be either "canceled, released, and extinguished" or "[r]einstated" "[o]n the Effective Date, or as soon thereafter as is reasonably practicable." ER-A0630. The Plan would extinguish all claims in Classes 7-15, see ER-A0630-36, including those of Canyon Bridge. If all non-extinguished claims were satisfied and all costs and expenses paid, any additional assets would be distributed to 501(c)(3) organizations selected by the Liquidating Trust manager after consultation with the advisory board. See ER-A0878-79.

The Plan assigned to the Liquidating Trust "any rights of the Estates to seek

---

[1] ER refers to the Appellant's appendix (dkt. 6-2), while SER refers to the Appellee's supplementary appendix (dkt. 8-2).

recovery . . . against Windtree, Oakmont Corporation, and any of their direct or indirect members . . . with respect to the Windtree Redemption." ER-A0603, 612. These putative rights stem from Wave's July 2019 settlement with Windtree, pursuant to which Wave paid Windtree $40 million in cash. ER-A1145. Windtree had alleged that Wave had made fraudulent representations to induce its $40 million purchase of preferred stock the prior year. See id.; ER-A0477, 621. Wave and the Committee spent time and money "exploring whether there exist Causes of Action to recover the funds paid to Windtree." ER-A0477. Lawyers billed over $1 million investigating these claims. See ER-A1124, 1144, 1176-80.

The voting deadline and the deadline to object to Plan confirmation were January 25, 2021. SER-SA01473. Although Canyon Bridge had expressed concern to Wave that the Windtree claims would be assigned to the Liquidating Trust while its own rights were extinguished, see ER-A1335, it did not object. Canyon Bridge objected only on February 9, one day before the confirmation hearing, arguing that the "residual value to Tallwood" section of the Plan violated the "fair and equitable" standard of 11 U.S.C. § 1129(b). It argued that, if the Liquidating Trust collected a significant amount from the Windtree claims, the available assets might exceed the maximum distribution. ER-A1334-38.

At the confirmation hearing, the Bankruptcy Court noted that all the documents and declarations supporting the Plan were in the record. ER-A0780. The Bankruptcy Court stated that it had read and considered Canyon Bridge's objection:

> [T]he heart of their objection – and I recognize it's late filed, but it goes to a key confirmation issue, so I'm going to have to address it one way or the other – is that[,] . . . although there's not clear information, this is a case that potentially could have funds sufficient to pay a hundred percent to general unsecured creditors with additional funds, that they assert those additional funds would then go to Tallwood and not to junior classes of creditors.

ER-A0782. The Bankruptcy Court noted that Wave was "the party with the burden of proof." ER-A0796. The Bankruptcy Court permitted Canyon Bridge to flesh out its argument that Wave had not met its burden. See ER-A0796-800.

3

1    Counsel for Wave then walked through the evidence and argued that it met its

2    burden to satisfy the "fair and equitable" requirement:

> [T]he appropriate standard for evaluating the valuation issues with respect to cramdown is full value of the claims on the effective date or full present value. . . . We're saying there is no hundred percent claim that is being paid more than full. . . .
>
> In addition to my comments earlier indicating there is a minimum of a fourteen million dollar gap between the value of the assets being distributed as determined through the marketing process and the total amount of the claims immediately prior to the confirmation of the plan[,] I will note a few items of fact that have already been provided in the record. First, there has been a robust marketing process laying support for the Court's conclusion with respect to the fair market value of the distributed assets, that's referenced in docket number 884. . . .
>
> [R]epeatedly in every disclosure statement and liquidation analysis, including that filed on December 1st, 2020 at docket number 848-3, the liquidation analysis has indicated no material value allocated to the litigation claims that are subject of Canyon Bridge's objection.

ER-A0826-27, 827, 828. Counsel also stated that "the debtor has indicated that it ascribes no present value to the litigation claims above and beyond the business aspect." ER-A0785.

After a recess, the Bankruptcy Court issued findings of fact and conclusions of law. The Bankruptcy Judge noted that the "fair and equitable" requirement in Section 1129(b)(2)(C) "requires that the plan provide, as of the effective date of the plan, the value of such interest or the holder of any interest that is junior to the interest of such class will not receive or retain property on account of its junior interest." ER-A0834. The Bankruptcy Judge went on to explain:

> The evidence in the record is that the effective date funds are approximately fourteen million dollars less than required to provide a full distribution. This evidence includes the 61.3 million dollar valuation of Tallwood's successful bid, the amount of claims asserted or allowed in the case, and the disclosures provided in the disclosure statement, along with its attachments. While the plan has improved over the course of the confirmation process, there's no evidence to support a finding that the full present value of the general unsecured claims will be provided to the liquidating trust on the effective date. Thus, I find that the plan is fair and equitable, and that

4

Section 1129(b) is satisfied.

ER-A0834-35. The Bankruptcy Court followed up on its oral findings of fact and conclusions of law with an order confirming the plan, which went effective on February 26, 2021. See SER-SA001562.

Canyon Bridge appealed the Confirmation Order but did not seek a stay.

## II.     LEGAL STANDARD

To establish Article III standing, a party must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; 4 and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." In re Palmdale Hills Prop., LLC, 654 F.3d 868, 873 (9th Cir. 2011) (quotation and citation omitted). Further, a bankruptcy appellant must establish prudential standing by showing that it is a "person aggrieved"—that is, "directly and adversely affected pecuniarily" by the bankruptcy court's order. Matter of Point Ctr. Fin., Inc., 890 F.3d 1188, 1191 (9th Cir. 2018) (quotation and citation omitted). An order that "diminishes one's property, increases one's burdens, or detrimentally affects one's rights has a direct and adverse pecuniary effect for bankruptcy standing purposes." Id. (citing In re P.R.T.C., Inc., 177 F.3d 774, 777 (9th Cir. 1999)).

When reviewing a bankruptcy court's decision, a district court applies the standard of review applied in federal appeals. See In re Crystal Properties, Ltd., L.P., 268 F.3d 743, 755 (9th Cir. 2001). The decision to confirm a chapter 11 plan is reviewed for abuse of discretion. In re Marshall, 721 F.3d 1032, 1045 (9th Cir. 2013). "Whether a plan is fair and equitable [under 11 U.S.C. § 1129(b)] is a factual determination reviewed for clear error." In re Sunnyslope Hous. Ltd. P'ship, 859 F.3d 637, 646 (9th Cir. 2017) (en banc) (citation omitted). "Clear error exists only when the reviewing court is left with a definite and firm conviction that a mistake has been committed." In re Marshall, 721 F.3d at 1039. The court may affirm on any ground supported by the record. In re Siriani, 967 F.2d 302, 304 (9th Cir. 1992).

### III. DISCUSSION

The Court concludes that the Bankruptcy Court did not abuse its discretion in confirming the Plan.

#### A. Standing

A preliminary issue is whether Canyon Bridge has standing. No distribution can be made to Canyon Bridge (at Class 7) until the following are fully satisfied: (1) general unsecured claims in Class 5; (2) allowed Tallwood claims in Class 3; and (3) the intercompany interest in Class 6. The Bankruptcy Court found that "the effective date funds are approximately fourteen million dollars less than required to provide a full distribution." ER-A0835. Any funds after that first $14 million would go to satisfying the "disputed" $97 million Class 6 claim labeled "Intercompany Payable." See SER-SA085. Only then would Canyon Bridge recover. Wave argues that Canyon Bridge cannot benefit from any hypothetical payout from the Windtree causes of action and is therefore not injured by the Plan.

In December 2021, the Court ordered supplemental briefing to clarify various details, particularly the nature of the "disputed" Intercompany claim. The parties stated that, as of December 2021, at least $11.6 million was still required to provide a full distribution to Classes 5 and 3. See Wave Supp. Br. (dkt. 14) at 2 (citing Kors decl. (dkt. 14-1) & Angeles decl. (dkt. 14-2)). Wave also stated that the Intercompany claim in Class 6 had increased to $151 million and that it was "reinstated" as permitted by the plan. See id. at 3. Canyon Bridge argued that this Intercompany claim was not validly reinstated because Wave did not provide any evidence as to when the purported reinstatement had occurred and whether it occurred as of the "Effective Date, or as soon thereafter as is reasonably practicable." Canyon Supp. Br. (dkt. 16) at 1 (citing ER-A0630).

The Court remains skeptical as to whether Canyon Bridge has standing. But the supplemental briefing did not sufficiently clarify the disputed nature of the Intercompany claim. Although interests of at least $11.6 million and as much as $160 million are ahead of Canyon Bridge, the Court finds that it is possible that Canyon Bridge is "directly and

adversely affected pecuniarily" by the order. See Matter of Point Ctr., 890 F.3d at 1191. Thus, Canyon Bridge has standing.[2]

### B. Fair and Equitable

The Bankruptcy Court did not abuse its discretion in confirming the Plan because it did not clearly err in finding the Plan "fair and equitable" under 11 U.S.C. § 1129(b).

A bankruptcy court may confirm a non-consensual plan of reorganization if, among other requirements, the plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). With respect to a class of interests, a plan is "fair and equitable" if it does not violate the absolute priority rule, meaning that "the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property." Id. § 1129(b)(2)(C). A corollary to this rule is the principle that no creditor can receive property in excess of the full amount of its claim. In re Exide Techs., 303 B.R. 48, 61 (Bankr. D. Del. 2003). The value a creditor or interest holder receives is assessed "as of the effective date of the plan." 11 U.S.C. § 1129(b)(2); see In re Perez, 30 F.3d 1209, 1214–15 (9th Cir. 1994) (collecting cases).

The Bankruptcy Court did not clearly err in finding the Plan "fair and equitable." After considering Canyon Bridge's late-filed argument and the evidence in the record, the Bankruptcy Court found that, as of the effective date, the available funds were $14 million short of satisfying the full distribution. See ER-A0835 ("The evidence in the record is that the effective date funds are approximately fourteen million dollars less than required to provide a full distribution."). Because there was a $14 million gap in effective-date funds, there was no basis to conclude that the Windtree claims—which were speculative and

---

[2] Wave also argues that the appeal is equitably moot because a "comprehensive change of circumstances has occurred so as to render it inequitable for this court to consider the merits of the appeal." In re Thorpe Insulation Co., 677 F.3d 869, 880 (9th Cir. 2012) (cleaned up). Canyon Bridge argues that a remand would require relatively little intervention in the Plan. Although Canyon Bridge did not seek a stay, and although there may be some thorny tax problems if this Court were to reach the merits and reverse, the Court concludes that the appeal is not equitably moot.

unasserted—would offer any class a windfall.  Thus, Wave had met its burden to show that the Plan was fair and equitable.

Canyon Bridge disputes this characterization, pointing to the Bankruptcy Judge's statement that "[t]here is no evidence to support a finding that the funds to be distributed to the liquidating trust <u>for Class 5 claims</u> shall exceed the allowed amount of such claims." Canyon Br. 16 n.16 (emphasis added) (quoting ER-A0834-35).  Canyon Bridge argues that the Bankruptcy Court never made any factual finding regarding its argument that Tallwood (at Class 3) would receive more than 100% of its allowed claims.  <u>Id.</u>; <u>see</u> Reply (dkt. 9) at 9-10.  Yet the Bankruptcy Judge clearly understood Canyon Bridge's argument, referring to the $14 million shortfall with respect to the "full distribution."  <u>See</u> ER-A0835; <u>see also</u> ER-A0782.  And Canyon Bridge acknowledges that the record indicates the shortfall was in fact $14 million.  <u>See</u> Reply at 13 (stating that "any recovery from the causes of action in excess of approximately $14.5 million would provide a windfall to Tallwood in excess of its allowed claims").

Canyon Bridge also argues that, because Wave had the burden to show that the Plan was "fair and equitable," it also had a burden to determine the present value of the Windtree claims to <u>demonstrate</u> that their present value did not exceed the $14 million shortfall.  Although the claims still remain unasserted, the Court agrees with Canyon Bridge that their present-day value was more than $0, and some effort probably should have been made to evaluate it.  But that is insufficient to show clear error.  Canyon Bridge must point to some indication that the present-day value of a hypothetical future recovery from the Windtree claims exceeded the $14 million shortfall as of the effective date.  Canyon Bridge repeatedly refers to the face value of the claims ($40 million) and the fact that lawyers billed over $1 million investigating them.  <u>See</u> Canyon Br. at 21 (citing ER-A1124, 1144, 1176-80).  But the claims remain speculative, and nothing suggests that it was clear error to find that the claims were not worth more than $14 million as of the effective date.  See <u>Marshall</u>, 721 F.3d at 1039 (clear error requires a "definite and firm conviction that a mistake has been committed").

### C. Other Arguments

Canyon Bridge's other arguments against the confirmation also fail. First, Canyon Bridge argues that the Bankruptcy Court improperly required Canyon Bridge to prove that the Plan was not "fair and equitable." See Canyon Br. 16-18. In a cramdown, the debtor has the burden of proof. Perez, 30 F.3d at 1214 & n.5. The Bankruptcy Judge stated exactly that. See ER-A0796 (noting that Wave was the "party with the burden of proof."). Nothing in the transcript indicates that the Bankruptcy Judge misallocated the burden of proof. The Bankruptcy Court recognized both (1) Wave had the burden to show that the Plan was "fair and equitable"; and (2) the Court itself had to be satisfied that the Plan was "fair and equitable." See Perez, 30 F.3d at 1214 & n.5.

Next, Canyon Bridge insists that the Bankruptcy Court abused its discretion because its confirmation decision was based on inadmissible evidence by Wave's counsel—namely, statements as to the $14 million shortfall and assertions about the tax consequences of the Plan. See Canyon Br. at 22-24. Yet Canyon Bridge failed to raise evidentiary objections in the hearing, and such arguments are waived if not raised below. See In re James, 829 F. App'x 768, 769 (9th Cir. 2020) ("We do not consider appellants' arguments regarding hearsay and unverified exhibits not raised before the bankruptcy court."). In any event, Wave's counsel cited his sources in the record, see, e.g., ER-A0827-28 (citing Bankruptcy Ct. dkts. 884, 1142-11, 537, 848-3), and the Bankruptcy Court made its findings after considering the whole record.

Finally, Canyon Bridge argues that it was denied due process because the Bankruptcy Court (1) only "reluctantly" provided an opportunity to be heard, and (2) interrupted Canyon Bridge before it had concluded its argument. See Canyon Br. at 25. Reviewing de novo, see U.S. Dist. Ct. for E. Dist. of Washington v. Sandlin, 12 F.3d 861, 865 (9th Cir. 1993), the Court rejects this claim. The Bankruptcy Judge permitted Canyon Bridge to speak for several minutes, and there is no indication that counsel was interrupted at the end of his remarks or that he had anything further to say. See ER-A0796-800.

9

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the Bankruptcy Court did not clearly err in finding that Wave's Chapter 11 Plan of Reorganization was fair and equitable. The Court finds that the Bankruptcy Court did not abuse its discretion in confirming the Plan and AFFIRMS.

**IT IS SO ORDERED.**

Dated: March 21, 2022



CHARLES R. BREYER
United States District Judge